UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KEON HARDY,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | }   Case No.:  **2:14-cv-00031-RDP** |
| | } |
| **KIM THOMAS, et al.,** | } |
| | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

This case is before the court on Defendants Kim Thomas, Willie Thomas, John Hutton, and Felicia Ford's Motion to Dismiss (Doc. 14), filed July 28, 2014. For the reasons outlined below, Defendants' Motion to Dismiss (Doc. 14) is due to be granted. Count V is due to be dismissed as to Defendants Kim Thomas, Willie Thomas, and John Hutton. Because they are entitled to state-agent immunity, Count VI is due to be dismissed as to Defendants Kim Thomas, Willie Thomas, John Hutton, and Felicia Ford. Additionally, because Plaintiff has failed to state a claim upon which relief can be granted against Defendants Kim Thomas and Willie Thomas, the claims against these two Defendants are due to be dismissed as well.

**I.    Facts**

In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). A plaintiff's allegations may or may not be the "actual facts" in a case, but they are accepted as true for purposes of evaluating a motion to dismiss.

Accordingly, the facts set out herein are those alleged in Plaintiff's Amended Complaint (Doc. 13).

In or around October 2011, Plaintiff Keon Hardy ("Plaintiff") was transferred to Bibb County Correctional Facility ("Bibb County" or the "Prison") to be housed as an inmate in the custody of the Alabama Department of Corrections. (Doc. 13, Amended Compl. ¶ 10). Beginning in or around November 2012, Plaintiff was repeatedly forced to engage in oral sex with Defendant Phillip Bryant, a correctional officer working at the Prison. (*Id.* ¶ 11).

On the first occurrence, Plaintiff was taken by a white guard, whose name he cannot recall, to an area of the prison where Bryant was working, and was forced by Bryant to perform oral sex on Bryant. (*Id.*). Bryant threatened and intimidated Plaintiff and caused Plaintiff to fear for his life if he should report the sexual abuse. (*Id.*). The sexual assaults of Plaintiff by Bryant continued, and Bryant threatened Plaintiff on almost a daily basis to keep him from telling anyone. (*Id.*).

In or around December 2011, Plaintiff submitted a written request to Defendant John Hutton, a Captain at the Prison responsible for the development and implementation of policies and procedures at the Prison and the training, and supervision of guards, jailers, and officers under his command. (*Id.* ¶ 12). In that request, Plaintiff notified Hutton of the sexual assaults by Bryant and asked him for help. (*Id.*). Approximately one week after he submitted the request, Plaintiff saw Hutton on rounds and asked if Hutton had received the letter. (*Id.*). Hutton responded by saying, "I am not thinking about your letter. You are just trying to get out of lockup." (*Id.*). Plaintiff claims the formal complaint made to Hutton "was made known to" Defendants Felisha Ford, Warden Willie Thomas, and Commissioner Kim Thomas. (*Id.* ¶ 18).

At some point in time, Bryant began providing contraband for Plaintiff including a cell phone, drugs (cocaine, marijuana, pills, etc.) and food. (*Id.* ¶ 13). Bryant forced Plaintiff to sell

this contraband for the benefit of Bryant and others involved in his criminal enterprise under direct threat of reprisals and physical assault. (*Id.*). Between December 2011 and February 2012, Bryant sent Plaintiff sexually explicit text messages on the cell phone which Bryant provided to Plaintiff detailing Bryant's sexual desires and describing the sex acts which Bryant planned to perform with Plaintiff. (*Id.* ¶ 14). Bryant also sent photographs of his penis with the text messages. (*Id.*). This cell phone containing this graphic content was confiscated by prison officials including Defendants during a later investigation. (*Id.*).

Bryant was emboldened by the lack of action by his superiors, and he recruited other guards to assist him in his systematic rape of Plaintiff. (*Id.* ¶ 19). In or around February 2012, Bryant summoned Plaintiff to the infirmary where he was stationed. (*Id.* ¶ 15). An Officer Edwards came to Plaintiff's cell and told him that Bryant wanted to see him in the infirmary. (*Id.*). When Plaintiff refused to voluntarily go, he was forcibly taken to the infirmary by Edwards. (*Id.*). Once there Edwards locked him in the bathroom where he remained until Bryant entered and forced Plaintiff to perform oral sex on him. (*Id.*). On another occasion, Officer Derrick Johnson masturbated in front of Plaintiff. (*Id.*).

While Bryant was subjecting Plaintiff to this continued sexual assault, Bryant commented to other correctional officers that when Plaintiff got out of prison, he was going to be Bryant's "man" and that "nobody should f_ _ k with him." (*Id.* ¶ 16). On at least one occasion, Bryant made these comments in the presence and hearing of Defendant Felisha Ford, a Lieutenant at the Prison. (*Id.*). In or around March 2012, Ford directly asked Plaintiff if he and Bryant had sexual contact. Plaintiff told her that they had. (*Id.*). No action was taken and no report was made by Ford. Thereafter, Ford referred to Plaintiff as Bryant's "husband." (*Id.*).

In or around May 2012, the last sexual assault on Plaintiff occurred. (*Id.* ¶ 17). Bryant came to Plaintiff's cell in "lockup" and again forced Plaintiff to perform fellatio on him. (*Id.*). Approximately three days later, Plaintiff reported the assault to a Sergeant Cameron. An investigation was then undertaken by prison officials. (*Id.*). Immediately, Plaintiff was taken and his mouth was swabbed for DNA. (*Id.*). Plaintiff had made a concerted effort in the intervening three days to preserve the DNA in his mouth, and the test was positive for Bryant's DNA. (*Id.*).

Plaintiff asserts that Defendants Ford, Warden Thomas, and Commissioner Thomas were aware of the potential for abuse -- and the actual abuse -- of other inmates by way of complaints made by Plaintiff at the Prison and by other inmates at other correctional facilities. Specifically, Plaintiff points to complaints of sexual abuse made by inmates at the Julia Tutwiler Prison for Women in Wetumpka, Alabama, the Holman Correctional Facility in Atmore, Alabama, and the Draper Correctional Facility in Elmore, Alabama. Based upon these complaints from other facilities, he claims that Defendants were on notice of the abuse Plaintiff suffered. (*Id.* ¶ 28 (citing *Washington v. Albright*, 814 F. Supp. 2d 1317 (M.D. Ala. 2010); *Oliver v. Brewer*, Nos. 13-0315-WS, 13-0254-WS, 2013 WL 3465188 (S.D. Ala. June 19, 2013); *Barley v. Jamison*, 2013 WL 802914 (M.D. Ala. Feb. 25, 2013))).

A number of state laws and regulations make it unlawful for any employee of the Department of Corrections to engage in sexual conduct with a person who is in the custody of the Department of Corrections. (*Id.* ¶ 20-24 (citing Ala. Code § 14-11-31(a); Admin. Reg. Nos. 208, 228, 318, 454). Nevertheless, Plaintiff alleges that Defendants Ford, Hutton, Warden Thomas, and Commissioner Thomas failed to train guards, jailors, and officers regarding these rules and regulations. He also contends they took no action to enforce the rules and regulations

4

when they had direct knowledge of violations.  (*Id.* ¶ 26).  Plaintiff claims this failure has caused (or led to) a custom and practice of tolerance of sexual abuse of inmates by other inmates on the part of Ford, Hutton, Warden Thomas, and Commissioner Thomas and other prison staff.  (*Id.* ¶ 27).

**II.     Standard of Review**

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Still, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the nonmoving party.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard.  First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as . . . factual allegation[s]." *Iqbal*, 556 U.S. at 678.  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Application of the facial plausibility standard involves two steps.  Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts.  That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct."  *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed.  *Id.*

**III.   Discussion**

Only certain of Plaintiff's claims are presently before the court. (Doc. 13).  Specifically, Defendants' Motion to Dismiss (Doc. 14) argues various bases for the dismissal of Count V and Count VI as to Defendants Kim Thomas, Willie Thomas, John Hutton, and Felicia Ford.[1]  For the reasons outlined below, the court concludes that Defendants' Motion to Dismiss is due to be granted, and Defendants Kim Thomas and Willie Thomas are due to be dismissed.

---

[1] Although Defendant argues for the dismissal of all claims against Defendants in their official capacity (Doc. 14 at 9-10), Plaintiff clarifies in his Response that he has brought all claims against Defendants in their individual capacity only. (*See* Doc. 15 at 1 n.1).

    **A.**    **Plaintiff Cannot Sustain a Claim for Relief on Count V ("Failure to Provide Protective Measures") Against Captain Hutton, Commissioner Thomas, or Warden Thomas.**

Count V of Plaintiff's Amended Complaint alleges liability under 42 U.S.C. § 1983 as to Captain Hutton, Warden Thomas, and Commissioner Thomas for "failure to provide protective measures." (Doc. 13, Amended Compl. ¶ 33 (Count V)). Defendants contend the allegations made in Count V improperly impute to Defendants' knowledge of Plaintiff's abuse based on unrelated lawsuits filed regarding abuse in other Alabama prisons. The court agrees and concludes that Plaintiff's claim contained in Count V should be dismissed in its entirety.

The Eleventh Circuit has held that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior. *See Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994). The standard by which a supervisor is held liable for the actions of a subordinate is "extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).

Supervisors can only be held liable under § 1983 in two situations: "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez*, 325 F.3d at 1234 (citing *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)); *see also Cottone*, 326 F.3d at 1360 (citing *Gonzalez*). "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' . . . or when the supervisor's improper 'custom or policy . . . resulted in deliberate indifference to constitutional rights.'" *Id.* at 1235 (citations omitted). "A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to

act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1236.

### 1. Count V Does Not Indicate Defendants Were Deliberately Indifferent to the Violation of Plaintiff's Constitutional Rights.

On these pleadings, Plaintiff has fallen well short of stating a claim that Captain Hutton, Commissioner Thomas, and Warden Thomas were deliberately indifferent to the risk of abuse directed at Plaintiff based *solely* on the notice of similar claims of abuse asserted in other prisons regarding other inmates. Nothing Plaintiff has alleged in Count V could have put the Thomas Defendants on notice of the need to correct any alleged constitutional deprivation directed at Plaintiff at Bibb County. *Gonzalez*, 325 at 1235. Count V of Plaintiff's Amended Complaint references only several unrelated cases of sexual abuse at the Julia Tutwiler Prison for Women in Wetumpka, Alabama, the Holman Correctional Facility in Atmore, Alabama, and the Draper Correctional Facility in Elmore, Alabama. (Doc. 13, Amended Compl. ¶ 28 (citing *Washington v. Albright*, 814 F. Supp. 2d 1317 (M.D. Ala. 2010); *Oliver v. Brewer*, Nos. 13-0315-WS, 13-0254-WS, 2013 WL 3465188, *2 (S.D. Ala. June 19, 2013); *Barley v. Jamison*, 2013 WL 802914, *1 (M.D. Ala. Feb. 25, 2013)). Plaintiff cannot, and does not, attempt to connect that alleged sexual abuse at wholly different locations to the abuse he contends to have experienced at the Prison.

Indeed, Plaintiff's theory that Defendants were on notice is undermined by one of the cases he cites in support of his argument. *See Washington*, 814 F. Supp. 2d at 1319-20. In *Washington*, the court rejected arguments that the prison supervisors (the warden and commissioner) were deliberately indifferent to the risk that the plaintiff may be subjected to sexual abuse by a prison guard by virtue of allegations in a separate suit that the prison was overcrowded. The court admonished the plaintiff for failing to ground her legal conclusion on

any factual basis. *Id.* at 1324 ("Washington asserts her conclusion that [prison officials] failed to protect her from the 'known harm' of their own officers and guards, but pleads absolutely no factual predicate for such a conclusion."). The court held that the claims against the prison's warden and commissioner could not be based upon a theory of *respondeat superior*, but "must instead be predicated on [the supervisors'] deliberate indifference . . . to risk that [plaintiff's] constitutional rights would be violated by a correctional officer sexually abusing her." *Id.* at 1324. Ultimately, the Middle District of Alabama dismissed the plaintiff's claims, concluding allegations that the warden and commissioner should have been on notice of a potential for danger to the plaintiff because of a previous lawsuit filed were unfounded. *Id.* at 1324-25.

Here, Plaintiff similarly cannot establish a factual predicate that Captain Hutton, Commissioner Thomas, or Warden Thomas was deliberately indifferent to a known risk of harm to Plaintiff based solely on the lawsuits filed against other prisons in the State. Plaintiff offers no theory as to why these lawsuits would have tipped Defendants off as to Plaintiff's abuse by Bryant and others.[2]

### 2. The Amended Complaint Contains No Well-Pleaded Factual Allegations Against Commissioner Thomas and Warden Thomas.

A careful review of his pleadings shows that all of Plaintiff's allegations against Commissioner Thomas and Warden Thomas are legal conclusions inartfully phrased as statements of fact. That is, they are conclusory allegations, not factual assertions. In fact, Plaintiff's Amended Complaint only vaguely references Commissioner Thomas and Warden Thomas. And

---

[2] Neither do these actions demonstrate a history of "widespread abuse" sufficient to sustain a claim for supervisory liability. *Gonzalez*, 325 F.3d at 1235. Certainly, by their nature prisons have an inherently high risk for abusive behavior, but Plaintiff has not offered anything in Count V from which the court could infer "widespread abuse" at the Prison. In fact, in each of the cases which Plaintiff cites, the plaintiff-inmates' claims were unsuccessful. Moreover, each case contained unsubstantiated allegations of isolated abuse that was not widespread. *See Washington*, 814 F. Supp. 2d at 1319-20 (alleging single assault resulted in pregnancy); *Oliver*, 2013 WL 3465188, at *2 (alleging single incident of abuse on morning of plaintiff's transfer to new prison); *Barley*, 2013 WL 802914, *1 (alleging sexual assault on August 17, 2009 in connection with a pat down).

while Plaintiff asserts that his request to Hutton was "made known to" the Thomas Defendants, The Commissioner and the Warden did nothing to stop the abuse and exploitation. (Doc. 13, Amended Compl. at ¶ 18), Plaintiff does not state how, when, or by what means the Thomas Defendants were made aware of his abuse.  Accordingly, Plaintiff fails to support his conclusion with any factual allegation from which the court could infer Commissioner Thomas and Warden Thomas are liable for the wrongful acts alleged.

Plaintiff asserts that, collectively with the other Defendants, Commissioner Thomas and Warden Thomas failed to train prison officers or enforce the rules and regulations regarding sexual abuse. (*Id.* ¶ 26-27).  Plaintiff contends the statutory and regulatory rules prohibiting sexual conduct involving prisoners (*see id.* at ¶¶ 20-24) are a "sham," and further argues that "Defendants actions were in direct violation of the above described written rules and procedures."  (*Id*. at ¶ 25).  Plaintiff attempts to support this accusation with further conclusory allegations that Defendants, collectively, had "direct knowledge of the violations" (*Id.* ¶ 26), and tolerated a "custom and practice" and "environment" of sexual abuse, intimidation, and exploitation.  (*Id.* ¶ 27).

The fatal flaw in relation to Plaintiff's contentions is that, based upon the dearth of factual allegations, the court cannot draw the inference that either Commissioner Thomas or Warden Thomas had knowledge of any sexual abuse directed at Plaintiff or a threat of such abuse.  Plaintiff's own assertions make plain that he has alleged sexual abuse took place in secret.  (*Id.* ¶ 12 (Bryant threatened Plaintiff on a daily basis to keep Plaintiff from telling anyone), ¶ 15 (Bryant and Edwards abused Plaintiff in a locked infirmary bathroom stall), ¶ 17 (Bryant abused Plaintiff in his cell during "lockup").  Certainly, Plaintiff alleges other correctional officers were privy to Bryant's assaults. (*See id.* ¶ 12 ("Plaintiff notified Hutton of the sexual assaults by Bryant and asked him for help . . . ."), ¶ 15 ("Plaintiff was locked in the bathroom by Edwards until Bryant arrived"), ¶ 16 (indicating Bryant told "other correctional officers . . . when Plaintiff got out of Prison, he was going to be

Bryant's 'man,' and that nobody should f_ _k with him"); ¶ 15 ("On another occasion, Officer Derrick Johnson, masturbated in front of Plaintiff.")). But, none of these allegations implicate Commissioner Thomas or Warden Thomas in Plaintiff's alleged constitutional deprivation, or allege facts that suggest they knew of and/or authorized the misconduct.

Plaintiff's attempt to recast his allegations against Commissioner Thomas and Warden Thomas in Count V as a "failure to train" still is of no help to him. (Doc. 13 at ¶ 26 (noting the supervisory defendants "failed to train guards, jailors and officers" under their command regarding the above-described rules and regulations)). Plaintiff asserts that the supervisors' failure led to "a custom and practice of tolerance of sexual abuse of inmates." (*Id.* ¶ 27). However, a supervisory official is not liable under § 1983 for an injury resulting from his failure to train subordinates unless his "failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact" and the failure has actually caused the injury of which the plaintiff complains. *Belcher*, 30 F.3d at 1397-98 (quoting *Popham v. City of Talladega,* 908 F.2d 1561, 1564-65 (11th Cir. 1990)); *Greason v. Kemp*, 891 F.2d 829, 837 n.15 (11th Cir. 1990); *cf. City of Canton v. Harris,* 489 U.S. 378, 388, 390 (1989) (addressing the analogous situation of municipal liability under § 1983). Only when the failure to train amounts to "deliberate indifference" can it properly be characterized as a "policy" or "custom," and, in this context, a showing of policy or custom is necessary for § 1983 liability to attach. *See City of Canton,* 489 U.S. at 389. As the Eleventh Circuit has acknowledged:

> Failure to train can amount to deliberate indifference when the need for more or different training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right.

*Belcher*, 30 F.3d at 1398 (internal citations omitted). Plaintiff pleads facts indicating that the incidents of abuse he suffered, though horrific, were hidden and secret. Plaintiff makes nothing

more than conclusory allegations regarding Commissioner Thomas and Warden Thomas's involvement.  There is simply not a single allegation in the Amended Complaint tending to show that they knew of, or were deliberately indifferent to Plaintiff's torment.  Therefore, as Plaintiff cannot sustain causes of action against them, the motion to dismiss (Doc. 14) is due to be granted in favor of Commissioner Thomas and Warden Thomas on Plaintiff's § 1983 claims.

### 3. Count V Against Captain Hutton is Redundant.

The court fully recognizes that Hutton is alleged to have had an independent source of knowledge of Plaintiff's abuse.  (Doc. 13, Amended Compl. ¶ 12).  Indeed, the court's ruling regarding the viability of Plaintiff's allegations in Count IV takes that allegation into account.  (*Id.* ¶ 32).  Thus, the court has concluded (and Defendant does not challenge this conclusion) that Plaintiff has plead a sufficient factual basis to support Count IV's supervisory liability claim against Hutton.  Instead, Defendants argue that Count V should be dismissed, in part, because it redundantly alleges supervisory liability under § 1983 as to Hutton, which is asserted directly in Count IV.   Plaintiff does not dispute Defendants' characterization of Count V as a claim for "supervisory liability" under § 1983.  (Doc. 15).  Plaintiff only distinguishes Count V due to Hutton's source of notice from the "several claims of sexual abuse in other prisons within the system set out above."  (*Id.* at 4).  As addressed more fully above, the court has concluded that this theory of notice is untenable as to any of the Defendants in this case.  Accordingly, because Count IV preserves Plaintiff's allegation that Hutton ignored direct notice of Plaintiff's abuse,[3] Count V against Hutton may be dismissed as redundant.

---

[3] To be abundantly clear, nothing in this Memorandum Opinion is to be read as disallowing Plaintiff to continue on Counts III and IV for supervisory liability against Ford and Hutton.  The factual allegations plead plausibly sustain these claims based on Ford and Hutton's personal notice of Plaintiff's sexual abuse.

Taken together, Plaintiff's Count V fails to pass the "extremely rigorous" standard by which a supervisor is held liable for the actions of a subordinate. Accordingly, Count V is dismissed against all Defendants in its entirety.

### B. Count VI Is Due To Be Dismissed Because State-Agency Immunity Shields Protects These Defendants.

Count VI asserts state-law negligence claims against all Defendants — Commissioner Thomas, Warden Thomas, Hutton, Ford, and Bryant. Defendants argue that state-agency immunity shields all Defendants, except for Bryant, against any state-law negligence claim. (Doc. 14 at 7). For the reasons outlined below, the court agrees.

In *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000),[4] the Alabama Supreme Court established the following test for state-agent immunity:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1) formulating plans, policies, or designs; or
>
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
>> (a) making administrative adjudications;
>>
>> (b) allocating resources;
>>
>> (c) negotiating contracts;
>>
>> (d) hiring, firing, transferring, assigning, or supervising personnel; or
>
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

---

[4] *Ex parte Cranman,* 792 So. 2d 392 (Ala. 2000), is a plurality opinion which was later adopted by a majority of the Supreme Court of Alabama in *Ex parte Butts.* 775 So. 2d 173 (Ala. 2000). *See also Fleming v. Dowdell*, 434 F. Supp. 2d 1138, 1162 (M.D. Ala. 2005) *aff'd,* 182 F. App'x 946 (11th Cir. 2006).

> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
>
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>
>> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>>
>> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Cranman*, 792 So. 2d at 405 (emphasis in original).

When a defendant raises state-agent immunity, courts apply the *Cranman* rule through a two-part burden-shifting analysis. *Fleming*, 434 F. Supp. 2d at 1163 (citing *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003)). Defendants bear the initial burden of demonstrating that Plaintiff's claims arise from a function that would entitle them to immunity. *Id.* If Defendants satisfy this burden, the burden then shifts to Plaintiff, who, in this case, must establish that Defendants "acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, *contrary to the requirements of the United States Constitution*, or that they were not exercising their judgment in the manner set forth in the examples in *Cranman*." *Id.* (emphasis added) (quoting *Quinlan v. Jones*, 922 So. 2d 899, 907 (Ala. Civ. App. 2004) (internal citations and punctuation omitted)).

Applying this two-part analysis, the parties apparently do not dispute that Plaintiff's claims arise from a function that would otherwise entitle Commissioner Thomas, Warden Thomas, Captain Hutton, and Lieutenant Ford to immunity. (Doc. 15 at 5). However, Plaintiff argues *Cranman* should be interpreted as exempting any qualified state agent who acts unconstitutionally under the Eighth Amendment from state-agent immunity to *state*-law claims. (Doc. 15 at 5). That is, Plaintiff contends state-agent immunity cannot be sustained against a

14

state-law action arising from an Eighth Amendment violation because the "Eighth Amendment's right to be free from cruel and unusual punishment is a fundamental right, a right which . . . may not be infringed upon by the state." (Doc. 15 at 5-6 (citing *Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005) ("Fundamental rights protected by substantive due process are protected from certain state actions regardless of the procedures the state uses.")).[5]  Under part two of *Cranman*'s burden-shifting framework, Plaintiff does not argue any other basis for sustain Defendants' exemption from immunity.

> 1. **Even Under Plaintiff's Theory of *Cranman*, State-Agent Immunity Protects These Defendants from Plaintiff's State-Law Negligence Claims.**

As an initial matter, because the court has concluded that Plaintiff cannot sustain any constitutional claim against Commissioner Thomas or Warden Thomas, even if the court were to accept Plaintiff's reading of *Cranman*, state-agent immunity protects these two Defendants from Plaintiff's state-law negligence claims. Accordingly, Count VI against Commissioner Thomas and Warden Thomas are due to be dismissed.

> 2. **Because Plaintiff's Theory of *Cranman* is Erroneous, State-Agent Immunity Protects Defendants Ford and Hutton from Plaintiff's State-Law Negligence Claims.**

The court accepts, for the purposes of this Motion (Doc. 14), that Plaintiff has plead the facts necessary to sustain an Eighth Amendment claim against Ford and Hutton. The issue is only this: does a well plead claim of an Eighth Amendment violation "require" Ford and Hutton to forgo state-agent immunity on Plaintiff's state-law negligence claims.

---

[5] Plaintiff correctly concedes that, notwithstanding *Cranman*'s exemption, state-agent immunity could not immunize a defendant from suit arising under federal law. (Doc. 15 at 6). Nonetheless, Plaintiff suggests that if the Alabama Supreme Court did not intend for this exception to apply to state-law claims which implicated rights protected by the U.S. Constitution, the exemption from immunity "when the Constitution or laws of the United States . . . require otherwise" is superfluous. (Doc. 15 at 6 & n.3).

15

Plaintiff does not offer rationale to support a conclusion that a well pleaded claim of an Eighth Amendment violation would disturb Defendants' entitlement to state-agency immunity against a state-law negligence claim. The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Contrary to Plaintiff's assertion, a State does not "infringe upon" a person's right to be free from cruel and unusual punishment by granting state-agent immunity to that person for state-law negligence claims. As Plaintiff has demonstrated in this case, 42 U.S.C. § 1983 and the Fourteenth Amendment provide Plaintiff the proper mechanism for vindicating State violations of such fundamental rights. As such, it cannot be said that the Eighth Amendment "requires" abrogation of state-law immunity under *Cranman*'s first exception to state-agent immunity. Accordingly, Defendants' Motion to Dismiss Plaintiff's Count VI against Hutton and Ford is also due to be granted.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 14) is due to be granted. Count V is due to be dismissed as to Defendants Kim Thomas, Willie Thomas, and John Hutton. Because the Defendants are entitled to state-agent immunity, Count VI is due to be dismissed as to Kim Thomas, Willie Thomas, John Hutton, and Felicia Ford.

Because Plaintiff has failed to sustain a claim upon which relief can be granted as to Kim Thomas and Willie Thomas, these two Defendants are due to be terminated. A separate order will be entered.

**DONE** and **ORDERED** this December 9, 2014.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE